**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JANUARY 1998 SESSION**

FILED

**February 18, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 01C01-9705-CR-00180** |
| Appellee, | ) | |
| | ) | **SMITH COUNTY** |
| VS. | ) | |
| | ) | **HON. J.O. BOND,** |
| **MICKEY HARRIS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Worthless checks) |


FOR THE APPELLANT:                FOR THE APPELLEE:


**JACKY O. BELLAR**                **JOHN KNOX WALKUP**
212 Main St.                      Attorney General & Reporter
P.O. Box 332
Carthage, TN 37030                **CLINTON J. MORGAN**
                                  Counsel for the State
                                  450 James Robertson Pkwy.
                                  Nashville, TN  37243-0493

                                  **TOM P. THOMPSON**
                                  District Attorney General

                                  **DOUGLAS HALL**
                                  Asst. District Attorney General
                                  111 Cherry St.
                                  Lebanon, TN 37087


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

**O P I N I O N**

The defendant was indicted in October 1995 on three counts of passing worthless checks. Following a trial, a jury found him guilty of two counts and ordered him to pay restitution in the amount of ten thousand three hundred sixty-four dollars and eighty-one cents ($10,364.81). The trial court sentenced the defendant to three years for each of his convictions and immediately placed him on Community Corrections. The sentences are to run consecutively. In this appeal as of right, the defendant challenges the sufficiency of the evidence. After a review of the record and applicable law, we find that the evidence supports the jury's verdict. Therefore, we affirm the judgment of the court below.

The defendant's convictions stemmed from his dealings with Rankin Oil Company in July and August of 1995. The defendant operated a BP Gas station in Gordonsville, Tennessee, and he purchased his gasoline from Rankin Oil. The defendant and Rankin Oil began their business relationship in 1992. Eric Rankin, vice president of Rankin Oil, testified that initially Rankin Oil would deliver a load of gasoline to the defendant and the defendant would subsequently pay for the amount of gasoline received. However, Rankin testified that in June of 1995, the defendant had become "several loads behind" and a new arrangement had been reached. Rankin testified that he had told the defendant he would have to pay in advance for all future deliveries of gasoline. As a result of this agreement, prior to gasoline delivery, the defendant would leave a check with Rankin Oil with nothing but the signature line completed. The gasoline would then be delivered and the invoice signed. The defendant, who had collected credit card receipts for gas purchases, would then take the credit card receipts to Rankin Oil in order to pay for part of the delivered gasoline. Once the credit card

receipts were subtracted from the invoice, the defendant's check was completed by a Rankin Oil employee for the remaining amount of the invoice.

The first count of the indictment resulted from a transaction in mid-July 1995. Rankin testified that about this time, the defendant had left a check at Rankin Oil and had requested that gasoline be delivered. An invoice showed that gasoline had been delivered on July 18, 1995. The defendant then took his credit card receipts to Rankin Oil in order to partially pay for the delivered gasoline. Subsequently, the defendant's check was completed. It was dated July 28, 1995, and reflected an amount of five thousand two hundred twenty-nine dollars and thirty-eight cents ($5,229.38). Rankin further testified that the check had been rejected by Citizens Bank on July 31, 1995, for insufficient funds. Rankin stated that the defendant had been provided the ten day legal notice as is required by statute.

The second count of the indictment involved a similar transaction. Again, the defendant left a check with Rankin Oil that contained only his signature. Gasoline was delivered to the defendant on July 28, 1995. The defendant paid part of the invoice with his credit card receipts and the remaining amount was filled in on his blank check. This check was dated August 7, 1995, and was written in the amount of five thousand one hundred thirty-five dollars and forty-three cents ($5,135.43).

The third count of the indictment stemmed from a transaction similar to the first two. Because the jury acquitted the defendant of this count, we have no reason to discuss it further.[1]

---

[1]Evidently, the third check was not presented to the bank within thirty days of its issue. Such delay negates the presumption of the issuer's fraudulent intent or knowledge or both of insufficient funds. T.C.A. § 39-14-121(b)(2).

Tennessee Code Annotated § 39-14-121 provides:

(a) A person commits an offense who, with fraudulent intent or knowingly:

(1) Issues or passes a check or similar sight order for the payment of money for the purpose of paying any fee, fine, tax, license or obligation to any governmental entity or for the purpose of obtaining money, services, labor, credit or any article of value, knowing at the time there are not sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order, as well as all other checks or orders outstanding at the time of issuance.
. . .

(3) This subsection shall not apply to a post-dated check or to a check or similar sight order where the payee or holder knows or has good and sufficient reason to believe the drawer did not have sufficient funds on deposit to the drawer's credit with the drawee to ensure payment.

(b) For purposes of this section, the issuer's or passer's fraudulent intent or knowledge or both of insufficient funds may be inferred if:

(1) The person had no account with the bank or other drawee at the time the person issued or passed the check or similar sight order; or

(2) On presentation within thirty (30) days after issuing or passing the check or similar sight order, payment was refused by the bank or other drawee for lack of funds, insufficient funds or account closed after issuing or passing the check or order, and the issuer or passer fails to make good within ten (10) days after receiving notice of that refusal.

The defendant argues that a check with only a signature is comparable to a post-dated check and thus is not covered under the worthless check statute. The Supreme Court has held that a post-dated check is not a "check" for purposes of the worthless check statute. State v. Stooksberry, 872 S.W.2d 906 (Tenn. 1994). However, we find that an incomplete check is not the same as a post-dated check. The Uniform Commercial Code defines a check as "a draft drawn on a bank and payable on demand."

4

T.C.A. § 47-3-104(2)(a) (1992).[2] A draft is an order, meaning it is a "direction to pay and must be more than an authorization or request." The person to pay must be identified with reasonable certainty. T.C.A. §§ 47-3-102 & 104 (1992). A check is payable on demand if it is payable at sight or on presentation or does not state a time for payment. T.C.A. § 47-3-108 (1992). Thus, the defendant's check was payable on demand and was not a post-dated check. We further note that the fact that the check did not include an amount does not affect its status as a check. See T.C.A. § 47-3-115 (1992)(defining an incomplete instrument). Therefore, we conclude that the defendant's check containing only his signature does fall under the parameters of the worthless check law. The defendant's assertion that his check was a post-dated check is incorrect.

The defendant also challenges his convictions by alleging that Eric Rankin and Rankin Oil "had knowledge or at least good and sufficient reason to believe the [defendant] did not have sufficient funds on deposit." He argues that because Mr. Rankin had started making the defendant pay for gasoline prior to delivery, Mr. Rankin should have known that the defendant would not have sufficient funds to cover the written checks. We do not agree. Knowledge of a lack of sufficient funds cannot be inferred based on the prior relationship between these parties. See State v. Newsom, 684 S.W.2d 647 (Tenn. Crim. App. 1984). This argument is without merit.

In conclusion, the evidence demonstrated that the defendant gave two checks to Rankin Oil to pay for two future deliveries of gasoline. These checks were returned by the bank due to insufficient funds. The defendant was properly notified of the bank's refusal to pay, but he did not remedy the situation by paying Rankin Oil what it was due. Thus, fraudulent intent or knowledge or both of insufficient funds can be

---

[2]The revised Uniform Commercial Code went into effect July 1, 1996.

5

inferred from the defendant's failure to make the checks good. The evidence further demonstrated that Rankin Oil had no knowledge or sufficient reason to believe that the defendant did not have sufficient funds in his bank account. The defendant's convictions are clearly supported by the evidence. The judgment of the court below is affirmed.

 

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
THOMAS T. WOODALL, Judge