IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 9, 2005

## STATE OF TENNESSEE v. CLAYTON WILBURN ESLICK

**Direct Appeal from the Circuit Court for Marshall County**
**No. 15800     Charles Lee, Judge**

---

**No. M2004-01459-CCA-R3-CD - Filed August 5, 2005**

---

The appellant, Clayton Wilburn Eslick, was convicted by a jury in the Marshall County Circuit Court of six counts of passing worthless checks. The trial court imposed a total effective sentence of six years incarceration in the Tennessee Department of Correction. On appeal, the appellant argues that the evidence was insufficient to sustain his convictions. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Fannie J. Harris, Nashville, Tennessee (on appeal), and Forest Durard, Shelbyville, Tennessee (at trial), for the appellant, Clayton Wilburn Eslick.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; W. Michael McCown, District Attorney General; Brooke Grubb and Weakley E. Barnard, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On September 17, 2003, the appellant was indicted by the Marshall County Grand Jury on eight counts of passing worthless checks. The proof at trial revealed that the appellant was a frequent customer of the Lewisburg Livestock Auction (hereinafter "the auction"). The auction was owned by Gene Vandiver, Lisa Blackwell, and Lisa's husband, Pete Blackwell. Sales of livestock occurred every Saturday of the month, with an additional sale on one Friday each month. Lisa Blackwell testified that the appellant had attended every sale held at the auction since the inception of the business in November 2001. She further testified that the appellant had purchased livestock at every sale he attended. Blackwell stated, "Generally, we may have had a couple of returned checks [from the appellant]. But if we did, he took care of all of those."

At the August 3, 2002, auction, the appellant purchased 138 goats for $6,070. On August 6, 2002, the appellant submitted check number 1065 as payment for the goats. The check was made payable to the auction on the account of Clayton Eslick or Chad Eslick, D/B/A C&C Farms. The appellant's account was with First National Bank of Pulaski (hereinafter "First National Bank"). Blackwell stated that approximately three weeks after the check was written, the check was returned by the bank for insufficient funds. She notified the appellant of the returned check, and he promised to pay the auction the amount owed. Blackwell explained, "In a way, he was given credit. [The auction] let him take the animals with the promise to pay."

At the August 17, 2002, auction, the appellant purchased 160 cows and goats for $6,732. On August 20, 2002, the appellant paid for the livestock with check number 1073, which check was also drawn on the First National Bank account. This check was likewise returned for insufficient funds.

At the August 24, 2002, auction, the appellant purchased 139 goats. The appellant paid the purchase price of $8,000 via check number 1072 on the First National Bank account. This check was also returned for insufficient funds. A calculator receipt attached to the auction's business records referenced check 1072 and reflected that the appellant had a balance of $55.05. Blackwell could not definitively explain the balance. She opined that there had been a mistake in calculating the appellant's bills, or the appellant had made an additional purchase after the check was written. Regardless, Blackwell stated that when she received the August checks, she believed that they were good.

On September 21, 2002, the appellant gave the auction check number 238 in the amount of $5,728.50 as payment for 112 goats which he had purchased that day and the previous day. This check was written on the appellant's account at the Bank of Belfast. Check number 238 was returned for insufficient funds. The appellant promised Blackwell that he would "make good" on this check.

Vandiver stated that on October 3, 2002, the appellant gave him check number 1079 drawn on the appellant's First National Bank account as payment for an outstanding balance of $25,000. This check was returned for insufficient funds. Rebecca Graves, a vice-president at First National Bank, related that the appellant's bank account records reflected that two other checks in October and two in November were returned for insufficient funds. However, Blackwell testified that during October and November, the auction did not have any of the appellant's checks returned.

At the December 20, 2002, auction, the appellant made two separate purchases of livestock. The appellant paid for one of the purchases on December 21, 2002, with check number 1116 on the First National Bank account in the amount of $10,345. This check was later returned for insufficient funds. The appellant told Blackwood that the other purchase was for "Mr. Johnson" who would later submit payment to the auction. On December 28, 2002, the auction received check number 1123. The check, which was written on the appellant's First National Bank account, was for the amount of $23,610 as payment for "Mr. Johnson's" purchase. The appellant later explained to Blackwood

that there was no "Mr. Johnson"; the appellant had purchased the livestock for himself. This check was likewise returned for insufficient funds.

Finally, at the December 21, 2002, auction, the appellant gave the auction check number 1115 on the appellant's First National Bank account in the amount of $9,842 for the purchase of livestock. This check was returned for insufficient funds.

Blackwell testified that at the first of January, she asked the appellant to stop attending the auction because his checks had been returned repeatedly. She explained that thereafter, because the appellant had been the major buyer at the auctions, sellers stopped bringing livestock to the auction. As a result, the auction was forced to close.

On January 13, 2003, Blackwell sent the appellant a certified letter concerning the returned checks, specifically referencing check numbers 1065, 1073, 1072, 238, 1115, 1116, and 1079. The letter was sent to the address listed on the appellant's checks. In the letter, Blackwell instructed the appellant to pay the amounts owed within ten days of receipt of the letter. However, the letter was returned as undeliverable. On January 29, 2003, Blackwell sent another certified letter to the appellant concerning returned check number 1123, again giving the appellant ten days to pay the amount owed. This letter was also returned as undeliverable. Nevertheless, the appellant contacted Blackwell regarding his worthless checks. Blackwell stated that the appellant called her home and told her that he would bring some money to her. When questioned regarding whether the appellant bought livestock on credit, Blackwell responded, "It is not the intentions, but that is what it seemed to be."

Based upon the foregoing, the appellant was convicted of four counts of the Class D felony of passing worthless checks between the amount of $1,000 and $10,000 and two counts of the Class C felony of passing worthless checks between the amount of $10,000 and $60,000. The appellant was sentenced to four years for the Class D felony convictions and to six years for the Class C felony convictions. The trial court ordered the sentences to be served concurrently for a total effective sentence of six years. Further, the trial court granted the appellant community corrections after service of one hundred and eighty days of his sentence in confinement. In sum, the appellant was convicted of the following:

| Count | Check | Amount | Date of Check | Class | Sentence |
|-------|-------|--------|---------------|-------|----------|
| 1 | 1072 | $8,000 | 8-24-02 | Class D felony | 4 years |
| 2 | 238 | $5,728.50 | 9-21-02 | Class D felony | 4 years |
| 3 | 1115 | $9,842 | 12-21-02 | Class D felony | 4 years |
| 4 | 1123 | $23,610 | 12-28-02 | Class C felony | 6 years |
| 5 | 1065 | $6,070 | 8-6-02 | Class D felony | 4 years |
| 6 | 1073 | $6,732 | 8-20-02 | Not Guilty | N/A |

| 7 | 1079 | $25,000 | 10-3-02 | Not Guilty | N/A |
|---|------|---------|---------|------------|-----|
| 8 | 1116 | $10,345 | 12-20-02 | Class C felony | 6 years |

On appeal, the appellant contests that there was not sufficient evidence adduced at trial to sustain his convictions.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39–14-121 (2003) provides:

> (a) A person commits an offense who, with fraudulent intent or knowingly:
>
> (1) Issues or passes a check or similar sight order for the payment of money for the purpose of paying any fee, fine, tax, license or obligation to any governmental entity or for the purpose of obtaining money, services, labor, credit or any article of value, knowing at the time there are not sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order, as well as all other checks or orders outstanding at the time of issuance; . . .
>
> . . . .
>
> (3) This subsection (a) shall not apply to a post-dated check or to a check or similar sight order where the payee or holder knows or has good and sufficient reason to believe the drawer did not have sufficient funds on deposit to the drawer's credit with the drawee to ensure payment.

The State elected to proceed on the theory that the appellant passed check numbers 1065, 1123, and 1116 for the purpose of obtaining credit. On check numbers 1072, 238, and 1115, the State proceeded on the theory that the checks were issued for the purpose of obtaining property.

On appeal, the appellant argues that the evidence was insufficient to convict him of passing worthless checks because "the evidence showed that he presented the checks for payment on a preexisting debt" and "even if he obtained credit or property the Auction had good and sufficient reasons to believe that he did not have sufficient funds in the bank to pay the checks at the time of issuance."

The worthless check statute "addresses a narrow factual situation, i.e. where the maker of a check or similar sight order obtains something of value by the fraudulent use of the instrument." State v. Stooksberry, 872 S.W.2d 906, 907 (Tenn. 1994). In State v. Newsom, 684 S.W.2d 647, 649 (Tenn. Crim. App. 1984) (citation omitted), this court explained:

> The general rule is, where the statute specifies the obtaining of something of value as an element of the offense, the giving of a worthless check in payment of a preexisting debt is not a violation of the statute. Since the debt remains unpaid the maker of the check did not obtain anything of value from the payee and did not give the check with intent to defraud.

The appellant's convictions for check numbers 1072, 238, and 1115 in exchange for property are clearly not related to a preexisting debt. On each of those occasions, the appellant attended a livestock sale, indicated his desire to purchase livestock, and the auction allowed him to tender a check to pay for the livestock. Accordingly, we conclude that the appellant's appellant's convictions for check numbers 1072, 238, and 1115 are supported by the record.

Next, we turn to the appellant's convictions for check numbers 1065, 1123, and 1116, which convictions are based upon the theory that the appellant received credit when he passed the checks. For each of the foregoing checks, the appellant obtained livestock, then tendered a check to the auction at a later date. On appeal, the State argues that "the jury found that the [appellant] passed [these] check[s] for the purpose of obtaining credit in the form of further participation in sales." At trial, Blackwell stated that the auction would not have allowed the appellant to continue to make purchases without first paying for his previous purchases. Additionally, Blackwell stated that the appellant bought livestock at every sale until "the first part of January" when Blackwell informed the appellant that he would not be allowed to participate in future auctions. Accordingly, we conclude that, in the light most favorable to the State, there was sufficient evidence to find the appellant guilty of passing worthless checks to receive credit. See Newsom, 684 S.W.2d at 649; State v. Franklin Underwood, No. 15, 1988 WL 52660, at *1 (Tenn. Crim. App. at Knoxville, May 24, 1988).

The appellant also argues that the auction knew or had good and sufficient reason to believe he did not have sufficient funds to ensure payment because of his history of worthless checks. See Tenn. Code Ann. § 39-14-121(c). Blackwell testified that until the first worthless check was written on August 6, 2002, the appellant had always paid the auction the amount of the returned checks. Additionally, Blackwell stated that although the appellant tendered checks that were returned for insufficient funds in August and September 2002, the appellant tendered good checks at every sale he attended until December 20 and 21, 2002. Further, the appellant was the single largest purchaser of livestock at the auction. In other words, the appellant had purchased livestock at every sale from the time the business opened in November 2001. There had been no problems with the appellant's checks until select purchases in August, September, and December 2002. Accordingly, there was sufficient evidence for the jury to find that the auction had no knowledge of the appellant's lack of sufficient funds. Further, this court has previously held that "conviction is proper even if the victim could with reasonable diligence and prudence have ascertained that representations made by the accused were false." Newsom, 684 S.W.2d at 650. In other words, "[k]nowledge of a lack of sufficient funds cannot be inferred based on the prior relationship between these parties." State v. Harris, 977 S.W.2d 127, 130 (Tenn. Crim. App. 1998). The appellant is not entitled to relief.

## III.  Conclusion

Finding no reversible error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE